States No. 25-6367 SZ DJI Technology Co., Ltd. and SZ DJI Biowire Technology Co., Ltd. at Balance v. United States Department of Defense, HEDL, Mr. Schaefer for the account, Ms. McDowell for the evidence. Good morning, Counsel. Mr. Schaefer, please proceed when you're ready. Good morning, Chief Judge Srinivasan. Good morning, Your Honors. Your Honors, the stakes in this appeal are high for my client DJI, but they're even higher and broader given that core, cherished principles of administrative law hang in the balance. In our respectful view, this court cannot possibly affirm without compromising the principles and precedents that this court has long and faithfully superintended. Because essential explanation and evidence from the agency are both missing on this record, this court has ample grounds for vacating the instant listing of DJI. And I'd emphasize, Your Honor, that to its credit, the district court made things streamlined and simple for this court. It expressly rejected most of the premises for DOD listing DJI as it did. So all that remains is a slender, frail thread of reasoning. My modest submission to Your Honors is simply that the statutory terms, together with this court's subtle precedent, dispose of that sole persisting thread on which the validity of DOD's listing depends. So let me start, if I may, Your Honors, with the statutory question of assistance. This is, Your Honors, 1260H, letter D, numeral 2, letter A. So here, Your Honors, to identify a, quote, military-civil fusion contributor, the agency is meant to look to whether an entity is, quote, knowingly receiving assistance, close quote, through the Chinese military planning apparatus in any given year. Against that statutory backdrop, the evidentiary gaps are manifest. And I'd note at the outset, Your Honor, that 1,600-plus companies have received the same award in various years without being listed by DOD. I'll return to that point later, Your Honors, but you can see that in AB 649. DOD's record establishes that there are 16 other-plus companies. Sorry to pause you. Can we, I just want to make sure that the clock is running. Oh, good point. Good point, Your Honor. We won't dock you, but, yeah. Thank you, Your Honor. So putting that observation aside for the moment, the latest evidence of DJI receiving recognition as, quote, National Enterprise Technology Center, NETC, Your Honor, that's from 2021 at the latest. You can find that in the app 275. That, Your Honors, is a far cry from DJI currently receiving assistance as is necessary for these listings. And note, Your Honors, that Congress specifically intends the listings to be made annually and to be revisited annually. So to say that a 2021 recognition carries forward to 2025 is to really undo that congressional intent that DOD's... Why would we think that a recognition by the Chinese government is itself time-limited? If we thought that the record establishes that at one time it came with benefits like tax breaks, the explicit purpose of which is to support a company, why would, and we don't know whether they're time-limited or not, isn't it reasonable to think that they would be ongoing? Your Honor, I think Congress thought the opposite. I think Congress thought that this was to be made explicitly based on the latest and best information available and that you can have delistings, the agency shall delist. And so if it were that any recognition at any time meant that you are perpetually understood to be knowingly receiving benefits, you wouldn't have that operation of the statute. But also, Judge Garcia, I mean, it's DOD's cherry-pick record, but it does tell you 1,600-plus companies have received this award over time. I mean, it's an award, Your Honors. It's like the Grammys. It's like Chambers. It's something that is done every year. And Judge Garcia, respectfully, there is nothing in the record that says the extent to which companies on whom the award is bestowed get those tax benefits. Even past awards have ongoing benefits. If you talk about a Pulitzer Prize-winning author, yes, they won the Pulitzer Prize eight years ago, but they're a Pulitzer Prize-winning author forever, and that carries something, a Nobel Prize-winning physicist. So it's conceivable, just because it's a past award doesn't necessarily mean it doesn't have current effects. It doesn't necessarily mean that it does, but it doesn't necessarily mean that it doesn't. And on this one, with the unclassified part of the instrument that we're reviewing, it does say that DJI benefits from the NETC qualification through tax breaks, free cash subsidies, and financial support and benefits in the present sense. And is that, do you disagree with that? Chief Judge, I do.  So is it true that there's no enhanced eligibility for a tax subsidy now by virtue of having gotten the NETC recognition in the past? Maybe my quarrel is a legal one, Chief Judge, but I don't think, if I am theoretically eligible for a tax break, I think there is a leak to say, and I am benefiting from the tax break. So I understand the legal point, but I just want to know as a factual matter, is there a dispute before us on whether, because of a past recognition as an NETC, there is a current eligibility for a tax subsidy that otherwise wouldn't be there but for the NETC designation? Chief Judge Sreenivasan, there is a factual blank on that. Keep in mind, I didn't get to make any bit of this record. This is DOD's record. We had no chance to make any submissions to it whatsoever. We haven't been heard by anyone. But there's nothing, and I stand on this, there is nothing in DOD's record that says the 2021 award has any import, even eligibility import, for DJI. And I think— Well, the document says benefits through tax breaks, and so I just, benefits is present sense. I'm sorry. Benefited. It says benefits. Are you referring to the DOD report or to the article that is cited in that? The report. The report itself on Appendix 276, unclassified bullet points as benefits. And I'm just, do you, can you make a representation, is there a current benefit in terms of eligibility for a tax break that otherwise wouldn't exist but for the NETC recognition? Two points. I'm going to, I'm not going to, I will answer Your Honor's question, but let me start, please, with the fact that this is a substantial evidence challenge. So our point, what you're reading from the report does not have substantial evidence to support it. All right, put that aside. And that's what Your Honor's will be upholding. If you say this is good enough as to DJI for any of these 1,600-plus companies, the fact that they ever received the award means they are knowingly receiving benefits. We would submit that that follows. What I can tell Your Honor is my best understanding is that DJI is not knowingly receiving benefits from the Chinese military planning apparatus through this award or otherwise. I offer that to Your Honor, but I don't have that in the record. Let me add a little bit to that. And if you can't answer it, I understand that because I understand your legal point about substantial evidence. But let me just ask on the factual question, and if you can't answer it, you can't answer it. But it's one thing to say we're not currently receiving financial benefits if that means we're not receiving, in fact, receiving a tax break. But what I'm asking about is eligibility to get a tax break that otherwise wouldn't be there because of the NETC designation. I think I understand what Your Honor's saying, but I want to be precise about this. My understanding is that the 2021 award does not result in any current eligibility for a tax break, not even a theoretical. There's that temporal issue. But then Your Honor's asking, am I disputing that the record establishes that the award recipient, DJI or anyone else, is theoretically eligible for benefits? We are not disputing that. I think that is established by the record. But what I think DOD needs to do is connect it to— What is established by the record? That a recipient of the award, by virtue of receiving the award, has some theoretical eligibility for benefits, tax benefits or other benefits. Presently has eligibility. Not from the 2021 award. Not from the—I believe that these awards are given on an annual or biannual basis. I see. So your understanding is that if you get the 2020—if you get a recognition in 2021, you get tax—you're eligible for tax breaks in that year. But then even the eligibility for tax breaks cuts off at the end of 2021. You need to get— That is my—you have to read on. That is my understanding. Okay? And it is—these are regular awards. They're not awards that are given in perpetuity. They are given and they are revisited. And there's also nothing— The same company gets it over and over. It could be the same company or it could not get the— Do you know that the same company has gotten it over and over? I think that there have been some recurring recipients, but not all are recurring as recipients. And I don't have— I take the point that this is not in the record, so I'm not slighting that point. But I just was curious about your general understanding by way of context. And let me also note, there's nothing in the record about what's required to apply for the award, what level of agency is required for that, what percentage of award recipients actually qualify for any of the benefits and avail themselves of those benefits, what percentage of the award recipients are, in fact, companies that are associated with China as opposed to companies like Volkswagen and Nokia that have also received it. So—and I'd note, Chief Judge Srinivasan, I think that the theory that DOD pivots to in front of this court is separate and distinct. The award—as I understand the way they treat the award now, the award itself is the benefit. That's what they're offering, Your Honor. This procedural—in the district court, did you say, look, this award in 2021 doesn't come with any tax breaks, this report's conclusion is erroneous and not supported by substantial evidence, and here is a declaration or some other evidence that shows that DJI isn't getting any tax breaks? Judge Wilkins, we had what we had submitted to DOD previously as to why DJI was not deserving of the listing. But in a case that involves— Did any of that say what I just said? No, because it had not been relied upon by DOD for prior listings that DJI had received the NETC award. That was new. And then— Okay, but once you saw the document that's—you know, the report from, I guess it's 2023, that's in the JA and the language at 276, did you, in the district court, say there's no substantial evidence to support this finding that DJI benefits from the NETC qualification because that's not how these tax breaks work? And here's a declaration. Judge Wilkins, I thought myself constrained. It was an APA challenge. DOD was perfectly clear that the administrative record had closed and that the appeal—that the challenge would need to be decided within the four corners of that record. And so there was no opportunity for us to do that. But what I did argue to the district court is what I'm respectfully arguing to your You look at the record, the same record that I'm held to, DOD is held to, and you just will not find that substantial evidence is our submission. And I think DOD recognizes that, which is why they offer a different theory to your honors, which is one where the award itself is the benefits. And for the same reason that we'll talk about later, your honors, the Chenery doctrine, I don't think that DOD here can rely on a rationale that's different from what your honors will see in the report. We're talking— So I guess just to put a ribbon on this, I mean, yes, it's an administrative case and the court is bound by the administrative records. But there's lots of instances where an agency makes an assertion and it's in the administrative record and then there's a finding. The agency doesn't always have to show all their work. There can be just a conclusion that's made. And in those circumstances where a regulated party believes that that conclusion isn't really supported by substantial evidence, there is a mechanism for a party to say to the court, that's not the case. Well, Judge Wilkins, here's my friendly amendment to your honors premise. I mean, I've had those cases. I welcome those cases. They're usually cases where we have an ALJ or we have an agency that's taking submissions from the adversely affected party and we have the chance to make our record that way. And then when I'm before the court, I can rely upon that administrative record and explain what the agency failed to account for. I mean, this is the rare APA case where I'm coming to you at the mercy of DOD's cherry pick record and I still submit to your honors in earnest that you will not find in DOD's record substantial evidence supporting its conclusion. That's not a very demanding standard. I would recognize it's not a very demanding one, but it's one that has some bite and it's not been met here. Just one more question on the procedural issue. My understanding is that in 2023, you did submit a delisting petition that's in our JA at 1195. Is there a reason maybe you thought it was not going to do anything? Is there a reason you didn't try that this time? Judge Garcia, to be clear, we've sought reconsideration since April. So we have had pending with DOD submission seeking reconsideration. There's no timeline on that. There's no obligation for DOD to do anything with it. So we are seeking reconsideration into now 2026. We just don't have any response to that. And that reconsideration submission is not part of the administrative record. It's not part of our record. Because it had closed. And this was after we were, you know. In those, have you made the factual representations you're making today? Obviously, you would about what this NETC recognition is and eligibility for benefits and so forth. Judge Garcia, what we have said is DJI is not knowingly receiving anything from the Chinese military planning. That is our submission. I'm not in a position to make representations to your honor about DJI status relative to this award. I simply submit to your honors that the record is what the record is. And if this record suffices for DJI, it suffices for any company that happens to have been listed for receiving the NETC award in 2021. And that argument is what it is, your honors. That's a substantial evidence argument. We also have our argument about the absence of reasoned explanation as to another separate essential statutory requirement that needs to be satisfied. This is the one requiring that DJI be, there be an explanation for why DJI contributes to the quote Chinese defense industrial base, close quote. This is under 1260. As to that part of it, is it your understanding that it's common ground here that that part of the statute is an additional element? Yes, that is common ground. And Judge Friedman was very clear about that. I don't think DOD disputes that for this line of analysis, which is what was upheld. But my understanding is that in other cases, that may not be so clear. That it may be that that's a redundant, that's redundant of the first part that we've been talking about is a military civil, is a military civil fusion contributor. Thank you for the clarification. I will leave it to my friends to offer their statutory construction. I think at least in a portion of their brief, they do seem to suggest, just as you're saying, your honor, that these are, they're coextensive inquiries. To say that DJI was a military civil fusion contributor, who received benefits, establishes that it's now flowing the opposite way. That it's contributing to the Chinese defense industrial base. That is a statutory argument that they've advanced to the court. I think, your honor, it really does. It guts the congressional intent to have these be separate and distinct inquiries. It also takes away Judge Friedman's express rationale. He was very clear, Chief Judge Srinivasan, that he found comfort from the fact that it would not suffice solely for DOD to establish that DJI had received the NETC award. He said they would separately need to show that a company is contributing to the Chinese defense industrial base. And that's also how Congress structured the statute. There's a definition. The definitional portion of military civil fusion contributor, that's a defined term. And it says there that it suffices for the company to have received. But then in the earlier portion of the statute, when it talks about the Chinese defense industrial base, it just uses, this term is a standalone term. It would basically collapse two separate statutory inquiries to say that they fold together. And satisfying one suffices for the other. I don't think that's a coherent. It's also federally itemized in the report. It is, Your Honor. So I think contemporaneously, DOD analyzed it that way. They've argued it that way. That's how the district court analyzed it in this case and also the Asai case. So I leave it to my friends to the other side if they're going to offer a different argument. I don't think that that's plausible or available to them at this point. So assuming that this needs to be separately satisfied, and I don't think that's a controversial proposition, I think it is equally undisputed, Your Honors, that DOD's entire purported rationale, I mean, every syllable of it, apart from the heading, is classified such that neither DJI nor the district court have reviewed it at all. That, Your Honors, decides the case in our respectful submission in our current posture. There's just no path to affirmance consistent with Chenery and its progeny. I point this court to its decision in Burwell, but there are many of them that say- The report, the unclassified report in explaining the summary findings says that DJI provides commercial services, manufacturing, producing, or exporting through the development, manufacturing, and sale of drone and camera technology. And so based on the foregoing that the Department of Defense makes this determination and so can't we look to the summary findings and elsewhere in the report to see, I guess, as the district court did, whether this finding about contributing to the Chinese military, what if the proper terminology is that there's substantial evidence for that finding? I'm sorry to disagree with Your Honors premise, but I don't think the district court thought it was finding in DOD's report, contemporaneous report, the explanation for why DJI was deemed to be contributing to the Chinese defense industrial base. The district court, I think, was very clear that he saw it clear enough from DOD's briefing and was inclined to credit that. That's my understanding of what the district court did. And with Your Honors quoting from the report, yes, the DOD did observe that DJI makes commercial and recreational drones. I would agree it does that. But to say that it necessarily follows simply from that, that it is contributing to the Chinese defense industrial base would have astonishing and I think unacceptable implications for a whole stripe of companies, including those who make drones, but also those who make automobiles. There's also a finding at that same page, J273, that DJI is indirectly owned or beneficially owned by Chinese state-owned entities. That was rejected by Judge Friedman. He specifically, that's a separate path potentially to deeming a company to be a Chinese military company. And you can also find in the decision where Judge Friedman found that that was not established as a matter of fact and as a matter of law and as a matter of due process. And DOD is not cross-appealed on that. So I don't think that that's an available rationale for differentiating DJI from all sorts of other companies that make all sorts of other commercial and recreational products that could theoretically Finding though, rejecting a finding that they are indirectly owned or controlled is not the same as rejecting a finding that they work with and might be benefiting a Chinese company. I've read that report carefully many times, Judge Wilkins. I don't see in the unclassified record anything that says DJI is working with China or the Chinese military, let alone doing that to develop drones in a way that is part of civil military future. I don't find that to report. Now, I don't know what I'm not seeing. I don't know that. But the reason I don't know that is because every update we're talking about, as Chief Judge Srinivasan and I were discussing, there is a specific portion of the report that reflects this determination under this heading. And all I have is the heading. Everything else is blacked out. So I don't know what's there and the difference. Let's suppose we review the classified portion and we let's suppose we agree with you that the unclassified portion, there's not substantial evidence to meet the standard. But once we review the classified portion, we believe that there is. I'd like to see if I can dissuade you from doing that, maybe at a later stage of the  I'll accept your Honor's hypothetical. I would ask your Honor to review that with the same judicial scrutiny that applies to any portion of the record. You won't have had the benefit of my arguments at that point. You won't have had adversarial process on it. But I do submit that you have from DOD a definition elsewhere of what it means to be contributing to a defense industrial base. It means you have to be able to meet military requirements. We've cited that definition in our brief. There's nothing different from DOD here. You have DOD acknowledging these are commercial and recreational drones that DJI makes. And I do have an unclassified record of evidence supposedly surrounding the findings that are made by DOD. And those portions of the record, I'll quote them to your Honors. Establish. I'd like to get to the answer to my question rather than pushing it off to the fact. Why shouldn't we look at the classified record? And if we think the classified record definitively answers the question and supports the designation, we affirm. Why shouldn't we do that? I think your Honor should be just as loath to do that in this case as you were in the TikTok case and as the Supreme Court was, which disavowed any reliance upon the classified record and Justice Gorsuch concurred after this court had taken that approach. I think that there are obviously core precepts that are part of judicial process that this court cares deeply about. And you see it in cases like Green. You see it in Microsoft. You see it in all sorts of cases where this court has said is a matter of judicial process. You do not want to have us be completely barred from having any access to evidence on which this court would rely. And of course, the district court, which is meant to be doing this work in the first instance, hasn't done any of this. I think you would want Judge Friedman's determination. We had a motion to compel the classified record to our security cleared counsel, Mr. Nitsa, who was prepared to look at whatever could be shared. That was never decided because the district court effectively deemed that submission moot because he wasn't looking at or relying upon the classified evidence at all. And you also have, in this case, you have demonstration that when you have completely untested evidence, then you do have mistakes. You have a statute that says that the court can look at this ex parte, right? You don't have such a statute in the TikTok and other cases, right? Well, in TikTok, you had a congressional statute that didn't speak to the process, but you had Congress's determination. Congress dictated the process, and, you know, we have cases like Rawls where, you know, a company is barred from an acquisition. And we said in Rawls that due process entitles you to no more than the unclassified record. So to the extent that the president makes a determination that you cannot acquire this U.S. company for national security reasons, the only thing you're entitled to know and try to respond and defend and change the president's mind is based on the unclassified record. You did say that, Judge Wilkins. And as you were vacating in that case because or in remanding because there had not been unclassified evidence. So I don't think you had to reach the bottom line holding that you would have to reach here as a matter of, I think, first impression. And I acknowledge you do have a congressional prescription that says there can be ex parte in-camera submissions. I don't think that tells you what the constitutional floor is. That's not up to Congress. That's up to this court. I don't think that tells you how the court manages its own business, which is under Article III and the separation of powers. I don't think you should be deferring to Congress about judicial, unduly deferring to Congress about how your honors are conducting your review of the district court at this point. But I would also emphasize, Judge Wilkins, every syllable of this has been redacted. Every syllable. And we know that there's unclassified evidence that's being cited in support. And we're offering security cleared counsel who could, you know, with the relevant evidence. And one other point, Your Honors, of course, Your Honor's precedent on this will be critically important to a host of regulated parties. I mean, it's not just DJI who will care a lot about Your Honor's decision. It's other companies. And they should know. Is DOD saying that anyone who makes a commercial or recreational drone by virtue of that is contributing to the Chinese military industrial base? Is it because there are specific showings as to these, what's being done to convert these products on the battlefield? Is it because of specific alleged ties to China that DJI is being differentiated? Or is it, as DOD seems to suggest in their brief, the mere fact that someone makes a product that could hypothetically be converted for some use on a battlefield means DOD can say that they've satisfied this requirement. To say that this court has relied on the classified evidence alone, I think would be really problematic as a matter of precedent, too. Counsel, as a doctrinal matter, is the Due Process Clause the exclusive source of your right to review the classified information? It's a great question, Judge Garcia. I don't have a definitive answer to that. I don't think it's the sole exclusive source. And I would note, I think due process operates differently once we are in court and have a right to be in court and we're obtaining just review as compared to what we will talk about with respect to pre-deprivation administrative process. I think you can see where the question is going, right? Is it bound up in this question of whether you have a liberty interest at stake? And if just so that we understand the position, whether, you know, if you read Rawls and all these other cases, they are analyzing this as a due process matter, not sort of some inherent matter of judicial process. I think I do know where the question is going. So let me answer it this way, Judge Garcia. Even if you disagree with me as to whether DJI was entitled to pre-deprivation process as a matter of due process, which it did not receive, even if you disagree with me there, you're not done with me for purposes of deciding is there a due process or other problem with reviewing the classified record? Because if, I'm not saying I think this, but if we concluded that there is no liberty interest or property interest protected by the due process clause at stake in these proceedings, then it does seem like the source for your right of access to classified information is gone, right? I respectfully disagree with that, Your Honor. And the reason why... What is the separate? That's my simple question is what other source other than the due process clause? I don't have chapter and verse to cite you here, but I'm giving you my best answer. I think it does come from Article 3 and how judicial process operates. I think it is by virtue of the fact, I don't think that you could disregard due process for this purpose any more than you could disregard. And I mean, this is just a hypothetical, Your Honors. If it turned out that a judicial decision maker in DJI's case had been bribed to reach a decision in favor of the government, that would be a due process problem, notwithstanding that DJI, before it was in court as a litigant, had not been entitled to pre-deprivation administrative process. And I think that there's just a strong judicial norm that needs to be enforced as well. And US v. Microsoft, this court was talking about how disfavored ex parte communications are as conflicting with fundamental precepts of our system of justice. In Oborezk v. Reagan, the same concept was coming out, not tied to, you know, necessarily property or liberty that had been established at the threshold prior to that proceeding. And I think that's how the Supreme Court spoke of it in Green, too. I also have Third Circuit cases that I think kind of take the concept beyond the strict threshold analysis of whether pre-litigation a party itself suffered a deprivation. I appreciate all that. Can I, in the interest of time, I want to, I just had a question about your, how you interpret the contribute prong, if we think it's a separate prong.  And I take it you don't, one thing I know you don't think is enough is a company sells products through retailers that could be purchased by a military, correct? That's correct, your honor. Especially if the products need to be converted in order to find military. Yeah, so how much, we're going to walk up the chain here. Is it enough if you know that the Chinese military is purchasing your products? Is it in, well, before we go down this. What does it mean? I just want to be clear about one thing. What I believe is that DOD's articulation of its rationale is critically important, and it needs to be a reasoned explanation. You may win on the tenery ground, 100%. All I mean to say is it's not up to me in the first instance to tell your honors what would need to be established. I think DOD has work to do to say here is our principled statutory interpretation and why a company satisfies. So I think a lot to answer, to be fair to your honors question, a lot depends on what DOD has said in the classified portion of this record or in some other record where they've explained what is their rationale for the listing of this company as compared to others. And now I take your honors questions as I find them. I just don't want to pretend that I'm able to speak for DOD as to what might be an operative rationale. But counsel, let's suppose you have a company that makes widgets. Yes, your honor. And maybe, and so it meets the, assume for the sake of the question that it meets the first standard that it is a military-civil fusion contributor. And maybe, you know, anybody I or anybody else could buy these widgets off of Amazon. But maybe because these widgets, you know, the way that they work and they're unique and they're special, they're great, that military buys them, maybe U.S. military buys them, maybe the Chinese military buys them as well. Is that company, does that meet the, contribute to the Chinese defense industrial base? I'm skeptical that it would, Judge Wilkins. I think DOD would have to do a lot of work to convince you that the statute goes that far. If militaries around the world love these widgets, including the Chinese military, then why isn't that contributing to the Chinese defense industrial base? This court had the same explanation, basically, in the GENES, the FDA case. So we said there's no limit to the statutory construction at that point. And I think you would have that problem here if we mean militaries love batteries, militaries love computers, militaries love backpacks, militaries love apparel, militaries love cars. And so it becomes kind of infinitely capacious if you do it that way. But if DOD were to do it that way, I think they would need to be sure. Governors can write the statute however they want to write the statute. That might be an argument that the statute is dumb, but we don't rewrite statutes for Congress. We interpret them and we apply it. But that's not how I read the statute. But that also, to the best of my knowledge, is not how DOD has told you it is reading this particular statute. But I'll also say, Judge Wilkins, I think DJI is better situated than the widget company because they have a policy against military sales and military use. These are commercial and recreational drones. So what you have in the administrative record, I think, is powerful for DJI that when there's allegedly been use on a battlefield, the Russia-Ukraine battlefield, you've had conversion of the products. So the products are different from what DJI is making and offering. And you've had substandard use. They are not military grade. They are not fit for military use. Every single article that DOD relies upon for the DJI listing says these are inferior drones that can be shot out of the sky. They're vulnerable to jamming. They don't have the range that they should have. Everything that a military, any military would want, let alone the Chinese military, you don't find in DJI's drones. So you have not only the policy, but those practical limitations. Now, there's something under the classification that I can't see, but everything I can see says that there has not been basis for the conclusion drawn by DOD. I'm curious if you've thought about the following. It seems quite possible next week or next month, there's going to be a relisting. And that's going to, maybe it'll have the exact same explanation, but it might have a new and better explanation. How would you, if you've given thought to it, how would we think about mootness if that happens? Well, I don't, I don't think we would be moot. I do think as we were talking about the 2021 award for DJI and kind of Chief Judge was talking to me about how that carries forward. I think it would be. Put a finer point on it. Would we still proceed to decide if the 2024 listing was adequately explained when there's been a new one? Just one clarification, 2025, the 2025 listing. I think so, yes, because that would be assigned to the world. This is a name and shame regime. It's saying that DJI in 2025 was a Chinese military company. And I do think that that has some persisting effect enough for us to have a live case or controversy around that. I also think it's telling that that annual listing has not yet come. Judge Garcia, I assume that DOD may welcome this court's guidance as to how it arrives at those listings. And we also have our concern about due process. I think it would be helpful for the sake of future listings to have a determination, even irrespective, perhaps, of what you do with the statutory questions to say that there should be some pre-deprivation process or at least post-deprivation process. We've had none of that. I know that I've been up here a long time. So I would just rest on our briefing as to other points that I've not been able to cover unless your honors have other questions. Okay. Thank you. Thank you, your honor. Ms. Mithill? Yes. Good morning, your honors. And may it please the court, Urja Mithill for the government. The department identified DJI as a Chinese military company under section 1260H. As the record shows, the Chinese government and specifically its military industrial planning selected DJI for special recognition in light of the drone technology that DJI is developing, drone technology which can and has been used in military conflict and for military purposes. The Chinese government's recognition of DJI as an NETC entitled the company to special policy benefits and awards. We talked earlier and you heard earlier about some of that discussion in the record at A649, which is what the department cited in its decision. I just want to kind of talk a little bit about that because we were having this conversation earlier. Can I take you at the outset to the second question on the statutory application statute, which is to the Chinese defense industrial base, that part of it? So the report has a separate heading that says DJI contributes to the Chinese defense industrial base. Now, let's suppose that we have a case in which there's nothing classified. So we don't even have to worry about redactions or anything. And the case is just like this one and it says DJI contributes to the Chinese defense industrial base and there's literally nothing after it. And then somebody says, well, wait a minute. There's just nothing here. And it gets to court. And then what happens? How can an APA challenge to that not succeed if there's literally nothing that comes after just the conclusion that DJI contributes to the Chinese defense industrial base? Would you take the position that then what should happen is that the court should look around to try to figure out whether it can piece together why the agency might have concluded that DJI contributes to the Chinese defense industrial base? I think it would depend, Your Honor, on what that agency decision said. And on other parts, I think that hypothetical, as you know, is different from what we have here because there is that classified reasoning that this court would be free to rely upon. I'm not even sure which way that cuts because if you have classified reasoning that's blacked out, then there's just a vacuum for these. Of course, the court can look at it. The district court did not. But it could be that what's behind the veil is just completely illogical. I'm not suggesting and I know there's a presumption of regularity. I totally understand that. But my point is just that if it's truly behind a veil that nobody can look at, as in the What if it said, let me just do it differently, DJI contributes to the Chinese defense industrial base, and then the explanation is for reasons that DOD has concluded is the case. And if somebody wants to figure out what those reasons are, well, you should scan the rest of the record. That would be more problematic than what you have here, Your Honor. But I think it's not just like scanning the rest of the record or the administrative record to look for those reasons. The district, the department's decision here, even if you look at the 10 to 15 page decision that you have before, it contains all of the reasons that the district court relied on, the department relied on. I think Judge Wilkins was referencing earlier the summary in that report and sort of if I can take a step back. It doesn't tell us what the reasons that DOD concluded that DJI contributes to the Chinese defense industrial base. So the summary explains that, as Judge Wilkins was explaining, that DJI produces this drone and camera technology. And there's a separate section of the department's decision that explains what it means to produce that drone and camera technology, what that drone and camera technology does, how it's sold to other militaries around the world. And so that is relevant to the agency's determination. And I think it is entirely proper, in this case, with this decision for the court to look to that reasoning, even if it's not under that particular heading. No, but the fact that it's not below that heading seems like it could well matter. Because suppose what's below the heading is notwithstanding anything else that's in this report, here's our explanation of why DJI contributes to the Chinese defense industrial base. Well, then we know that we shouldn't, at least for chenary purposes, we wouldn't be looking at elsewhere in the report. I think, Your Honor, I can't speak to what's below the heading, but I think it would be proper to look at the department's reasoning as a whole, because what this court is looking at is the propriety of the agency's determination that DJI is a Chinese military company. That's a determination that has these different parts, whether it's either owned by or is a military civil fission contributor, whether that contribution is to the Chinese defense industrial base. And it's proper for this court to look at all of the determinations that are in that 10 to 15-page report and the record below it. I don't think there's any reason this court has to limit itself to what's beneath that heading. If that were the case, then what that would mean is that if there's some fact— I don't think I disagree with you that a court shouldn't limit itself, because you have to take into account the explanation in context, and you have to consider it in light of the entire report. I don't disagree with you on that. I guess what seems to raise the question is there is something under the heading, but the case has been litigated on the assumption that what's under the heading doesn't matter. And that just strikes me as tough when it's an APA challenge, because what's under the heading is definitely the first thing that one would look at in the normal course. Yes, you would look at the entire report. I don't dispute that for one moment, but the idea that there is an explanation, but that explanation just shouldn't matter, whether the DOD's application of the provision should be sustained, should depend on anything, everything other than what's under that heading, just strikes me as an odd way to do APA review. So I wouldn't say that we've taken a position that what's under the heading doesn't matter, and this court, as you all know, is free to look at that and has the record before and has that agency decision in unredacted form. It's that because it is appropriate for the court to look at the evidence in the record, in the administrative record, and the other parts of the department's decision, what the district court did here was proper, which is it looked at that evidence that's in other sufficient to uphold the department's conclusion that DGI contributes to the Chinese defense industrial base. I don't think that's disclaiming the relevance of what's under the contributions to the Chinese defense industrial base heading. That's simply, as you said earlier, looking at that context and saying that supports that  And in other words, there's like ample evidence and all that evidence taken together is enough. That sounds kind of like sufficiency review, which, you know, if it's a sufficiency of the evidence case, I could see that. But for APA review, it's supposed to be trained on the actual reasons that the agency gave. And that's what makes it a little difficult to say. If you look elsewhere, you'll see that the findings can be substantiated based on all of this because the way that the case, the posture of the case now, it's in a vacuum to some extent because we don't know that that's, in fact, what the decision rested on, what's elsewhere in the document. It might well be sufficient. I mean, maybe we could even stipulate to that for purposes of this exchange. But it's tricky with APA review when we're supposed to be looking at the reasons, in fact, given. And I don't mean to repeat myself, but just to kind of take a step back, this court would be free to look at that reasoning below the heading because of the standard of review here. And I think to kind of better understand what the district court did here is we don't understand it as disregarding that. What we understand the district court did is it looked at sort of two buckets of reasoning or two kinds of reasoning. First, it said, look, the nature of the drone technology, the nature of the technology we're talking about, the nature of the product we're talking about here is drone technology, which has this sort of substantial military application. And that's detailed in this report under a separate heading that discusses DJI's development of drone and camera technology. And that points to evidence in the record, I think at like around 8 to 96, that describes the effects and the use of drone technology in military settings. And it said, look, looking at the nature of this technology, the department concluded that there was a contribution to the Chinese defense industrial base. And so the way you've laid it out, I mean, I think it's consistent with this assumption, but I just want to make sure you don't disagree with it, that we ought to operate on the assumption that the district court reached the conclusion that DJI contributes to the Chinese defense industrial base is satisfied without looking at the explanation that was given in the report. That is what the district court did. I mean, the district court disclaimed reliance on anything classified. So I think that's, I agree with your honor on that point. And I think that was proper given the nature of this report, where there are some of the evidences repeated in the report, some of the conclusions are overlapping as to the nature of the drone technology and its relevance to the military sphere. And so the overlapping nature of the evidence, the fact that the same evidence could be probative to different conclusions in the department's determination made it entirely proper for the district court to look at bullet points and paragraphs that came later in the department's decision or aspects of the administrative record that were unclassified, including the articles that the district court cited to uphold the department's determination on this point. And I think that's what happened. So let's suppose that the area under DGI contributes to the Chinese defense industrial base. Let's suppose that's unclassified and we can see that. And it says something that is really like illogical. It says, because DGI is just a successful company that is affiliated with China, we think that that in and of itself contributes to the Chinese defense industrial base, whether they made drones or whether they made batteries or widgets. And so based on that, that's what we are arresting our finding. So that's what, in my hypothetical, that's what is said in that paragraph that's redacted. And let's suppose we don't think that that meets the statutory standard. Wouldn't it be a chinnery problem for us or the district court to go look elsewhere in the report and say, well, the nature of drone technology is such that, you know, there could be ample basis to say that it contributes to the DGI, contributes to the Chinese defense industrial base. Wouldn't it be problematic for us to say, well, the reason that they gave doesn't cut it, but we can find another reason somewhere in the report that does? Wouldn't that be a chinnery problem? I think that in that case, there would be certainly an arbitrary and capricious problem that would be different from the problems that wouldn't, that doesn't exist in this case. And there might be a problem, a chinnery problem that would emerge or at least be more apparent because of the inconsistency between what that hypothetically redacted paragraph said and what the district court concluded here looking at, let's say, what you're saying is outside that redacted paragraph. So how does the district court know that if the district court doesn't look at this redacted paragraph, how does the district court know that it's not just gobbledygook behind those redactions that don't really support this? And if that's the case, then isn't there a chinnery problem to look elsewhere in the report and say, okay, that supports the finding? Sure. I don't think, we think there's a chinnery problem here in looking at other parts of the report because these parts of the report aren't sort of entirely separable as I've been explaining. They are overlapping. They're referencing similar evidence, all of it sort of compounding and sort of building on each other about the nature of DJI's drone technology that's producing its contributions to the Chinese defense industrial base, its ties to the Chinese government, the benefits that it's receiving. It's because of the nature of this decision. There might be other kinds of agency decisions where one subheading is entirely separate and unrelated to another subheading. That's not the kind of subheading we have or report we have here. I think another way of thinking, another way we know that this is not that kind of a report or context, that the statutory context matters, and this is not to sort of go on to a different topic, but it's a question that Commissioner Rivasan asked earlier, which is sort of about whether being a military-civil fusion contributor to the Chinese defense industrial base is, in fact, an entirely separate analysis. We've discussed in our brief that point as a separate point of analysis because that's how the district court approached it, and it's consistent with how this decision is structured by the agency. But if you look at the statute, and that's fine, and we have no objection to this court analyzing the question the same way, but if you look at the statutory language, what Congress wrote was it directed the agency to identify a military-civil fusion contributor to the Chinese defense industrial base, and then it defined in a series of enumerated definitions the term military-civil fusion contributor. And in the first part of our brief, we explain why the NETC designation assistance received by DJI satisfies that definition, which would then satisfy the term military-civil fusion contributor, leaving only the question of whether that contribution was to the Chinese defense industrial base. I parse these words out not to make this a complicated statutory question, but to sort of reinforce the point that these determinations are overlapping, whether an entity is a military-civil fusion contributor, and then whether that contribution is to the Chinese defense industrial base. Even in the statutory language, the word contributor appears in some senses twice, and so it makes sense, then, to read the agency decision understanding this is all one long analysis looking at where all the evidence can. It's fair to look at the evidence under a different heading as probative and relevant to other parts of that statutory determination. All of this evidence is going to... That definitely seems right, and I take the point about contributor because the Venn diagrams overlap on contributor, which kind of cuts in both directions. And it seems like it may well be the case that whatever evidence supports the first part of it, the military-civil fusion contributor could also bear, maybe to a material extent, maybe to a dispositive extent, on whether it's also a contributor to the Chinese defense industrial base. But the way you've spelled it out now, I don't understand you to be taking the position that it's, in fact, totally redundant, that there's nothing separate to the Chinese defense industrial base part of it. That's right, Your Honor, and I don't mean to say it's entirely redundant. I just want to reach out to the government's position. I just think this is another reason why it's not a Chenery problem, that another reason why it's fair for the district court and this court to look at the evidence on these other pages of the department's decision. And I'll run through it super quickly, just some of that relevant evidence in other parts of the department's decision that we've highlighted. There is obviously that section on DJI's development of drone and camera technology, the purchase by the Ukrainian Defense Ministry of DJI drones, 27.5 million of it. There's discussion on pages four and five of the use of DJI drones by the PLA to develop additional technological inventions, discussion on page five of the National University of using DJI drones to develop and patent additional inventions. So, I'm not saying you need to look or rely on all of that. I think the district court's sort of simpler reasoning more than suffices to uphold the contributions to the Chinese defense industrial base analysis, but there is plenty there that sort of is overlapping. Can I just ask about the district court's rule, as I understand it, is so long as you a product that has a substantial non-theoretical military application somewhere, that's enough. There doesn't need to be any connection to the Chinese defense industrial base under the district court's analysis. Is that correct? The definition that the district court applied and sort of the definition that it quotes from its earlier decision in the Hisai case is similar to what Your Honor is setting out. There have to be some kind of a nexus to the Chinese industrial base. You're right, Your Honor, that there would need to be that kind of a nexus here, and we think that there is enough evidence in the department's decision of that nexus. There is evidence of substantial military application in exactly the way the district court explained in the use of these drones in warfare in the Russia-Ukraine conflict, in the obvious military application of this kind of drone technology, just writ large, as set forth in the articles in the record around, I think, 296, about the use of drone technology in military settings. And then there's evidence of DGI's ties to the Chinese defense industrial base, as we've set forth in our brief, through sort of, again, what I was describing earlier, this overlapping evidence throughout the record and throughout the decision. DGI has ties to the Chinese military industrial planning apparatus. It received this special designation. It was selected by Chinese military planners for this designation as an NETC. What the purpose of this entity, this Chinese government body that bestows this designation, seeks to identify companies where economic advancement and progress will help the military establishment in China. That's what the National Development Reform Commission does. It's part of the state council and bodies that do this. There's evidence of other ties to the Chinese state, as Judge Wilkins was describing earlier. I think all of that, in this case, at least, provides evidence not only of a substantial military application, but that nexus to the Chinese defense industrial base. And so I think that's sufficient here. I think the specific wording of the district court's definition in Hisai that it applied here doesn't include the word Chinese, as perhaps it should, as Your Honor points out. But there's ample evidence of that here. So I think you get all of it when you look at the department's reasoning here.  Can I take you then to the other part of the statute, the overlapping but other part, military-civil fusion contributor? So there's the unclassified bullet on 276B Appendix that says DJI benefits from the NETC qualification through tax breaks, pre-cash subsidies, and interest for state-owned capital. So are you relying on that as the receiving assistance, or are you saying that just by virtue of the NETC designation, that's receiving assistance? It doesn't even matter that the consequence of getting the NETC qualification is that there's available, apparently, tax breaks, free cash subsidies, and interest for it. So the department's decision here relies on the benefits that the NETC qualification entitled DJI to, which are where the citation here is to that page on 649 of the JA. I think on the question of whether the designation alone would suffice, that's not what the department has said in its decision. It's not the reasoning that we're defending here. But I think it would suffice probably. The department has taken a position on that, but I think it's helpful to look at the statutory language here and in the amended statute at G3A, which is the section that contains the knowingly receiving assistance prong now. The Congress, in amending the statute, made clear that selection or designation as an enterprise associated with industrial planning or military-civil fusion efforts would, in fact, suffice as knowingly receiving under the amended version of the statute. And so to the extent there's any question about whether these benefits are being received and whether the benefits are assistance and whether they're ongoing, the fact that the designation itself is clearly exactly the kind of conduct that Congress intended to capture in this provision, it's, I think, a useful background point. But for purposes of the arguments before us now, you're not taking the position that the designation alone, you're not taking the position that the DOD's determination should be sustained based on the designation alone? The department's determination need not be sustained on that basis because of the record evidence and because of the way the department arrived at this decision, because the record evidence made clear that receiving this NETC designation, being conferred with a special recognition automatically entitles you to these cash subsidies from the central government, from provincial governments, to tax benefits, to eligibility, to other kinds of policy benefits, again, from both the central government and from other sub-central governments. That was why the department arrived at this conclusion that DGI benefits from that qualification. And so there's essentially too much evidence here or more evidence than just the designation. And do you think that wouldn't matter if all of that expired at the end of the year and it had to be re-upped in order for those benefits to be sustained to the next year? So there wasn't any—if that were the case, that would be a different case, but the record evidence here didn't say that all that expired. DGI hasn't proffered any evidence that all that expired, hadn't made any of those arguments or provided any declaration saying so in district court or in this court, in the court of—it's briefings. But does the—is there record evidence that we should take note of that says that it doesn't expire? There's no evidence on the time frame, sort of as Your Honors, I think both Judge Garcia and you were pointing out earlier, there isn't evidence about sort of how long this recognition lasts. I think I'll make one kind of point that there was, to the extent any inference needed to be drawn, a lot of these kinds of policy benefits, subsidies, tax benefits, so on, that are described in this article, not just at the top where it's talking about DGI, but sort of throughout, are—appear to be the kinds of assistance and benefits that would have sort of long-running beneficial effects or assistance. Is the article cited in the footnote? This is the article cited in the footnote that we cite in our brief for this point. Yeah. There's one article. And so it would be reasonable to infer that there are ongoing benefits from this designation to the extent you're receiving sort of $5 million to $15 million or so forth. But there is no time frame sort of set forth in the article itself. Make sure my colleagues don't have additional questions.  Okay. Thank you. Thank you, counsel. We'd ask this court to affirm. Thank you. Mr. Schaffer, we'll give you three minutes for rebuttal. Thank you. Very kind, Your Honor. Let me start where you finished. Just in terms of the new statute versus old statute, Judge Friedman was very clear. He was relying upon the old statute, which is what DOD had listed DGI under. That's footnote three of the decision that's before Your Honors. And that was because DOD had argued it that way. And they had made their rationale, as Your Honor was noting, under the prior statute. If they were operating under the new statute, then they would have had to put provide a public justification for listing DGI as they did. They didn't do that when the designation was first made. So they would have that problem under the new statute. We've let go of that, Your Honors, because we've just said, okay, this is being decided under the old statute as it was by the district court. Last point, Chief Judge. This new statute doesn't speak to the question we were focused on, whether you need to have assistance apart from the award. It just says that if you receive it under a different type of award, you receive assistance through that award. That will suffice. It doesn't say that the award itself is the assistance. I think it still falls to DOD to have substantial evidence that there was actual assistance. Let me turn to the other point, though, Your Honors, about contributions to the Chinese Defense Industrial Base. I just want to emphasize that everything under the heading is, in fact, blacked out. None of it was reviewed by Judge Friedman. He was very clear about that. He never went to a SCIF. He never accessed the classified record. He's never seen it, so far as the record reflects. And he deemed our motion to compel the classified evidence moot, simply because it played no part in his decision. So one problem, I think, Chief Judge Srinivasan, is the generic problem that whatever DOD has as its operative rationale, we're all blind to that right now, unless you look at the classified evidence. But another problem you have, as DOD now, through counsel, tries to cobble together the rationale, you can find it in this portion of the report. You can find it in that other heading. Well, Your Honor, if unclassified portions of the record supply DOD's operative rationale, why was it all classified? Wouldn't we have been entitled, under that theory of DOD's rationale, to see that they're saying about DJI for this purpose, things that they've said about DJI for other separate statutory purposes? You just cannot, I think, credit this as a principled classification and also say it comes from, it is replicated in other portions of the report. That is another reason why I don't think you can do what DOD's counsel is urging you to do and kind of cobble together the rationale elsewhere. And the discussions that you're having with DOD are critically important. Is it, Judge Wilkins, just about widgets? Is it, that's good enough? If there are widgets that a military might ever purchase, is it the fact that widgets were purchased by the Chinese military? Is it the fact that these widgets have particular military uses? We don't know. I don't know. What exactly is DOD's rationale? And I think that's critically important to Your Honor's decision in this case and also critically important to other regulated entities that are trying to understand how DOD comes to the rationale that it does. Last point, Your Honors. We're not demanding the impossible of DOD. All they need is some substantial evidence that connects the dots that we were talking about with respect to assistance. They have that substantial evidence. There are just gaps in the record, as we were discussing earlier. And for this purpose, contributions to the Chinese defense industrial base, if they want to bottom line it and say, here is why we're finding that, they can provide that in an unclassified way that we can review and challenge and that Your Honors can review. You don't have that in this case. You should insist upon that before you uphold a listing like this. That's our respectful submission to Your Honors. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Wilkins; Garcia